Our next case this morning is Sean Shannon v. United States. Good morning. May it please the court, Attorney Kirk Lablace representing Mr. Shannon in this case. It appears that you would reverse the district court's decision to deny the petitioner an evidentiary hearing in this case. It would appear that the heart of the issue as it was briefed out by both parties is whether or not the evidence in this case was overwhelming. That appears to be what the district court determined in denying Mr. Shannon's 2255 motion. And as I pointed out in my reply, the reason that the evidence appears overwhelming is that Mr. Shannon's defense counsel didn't mount any sort of defense in this case. And, of course, that is our claim, that he was ineffective in mounting any defense in this case. Mr. Lablace, could I ask you, as I understand it, the defense rebuttal to at least a substantial volume of evidence is that perhaps this other fellow managed to get hold of Mr. Shannon's Apple account and ID and did all these things and made it look like Shannon is guilty. I looked at the affidavit that you all submitted for Mr. Richardson on Apple devices and programs and I did not see there that he addressed the government's point at trial that the, I'm not exactly sure what this is, but there were not log entries that would have been there if somebody else had been using or accessing his devices. Yes. Could you address that, please? I can't. And I would agree that Mr. Richardson's affidavit did not specifically address that issue. However, he did address the issue on whether or not an individual who had a person's Apple ID could access other devices that are associated with that Apple ID without his knowledge. I understand that point, and that's the point that Richardson is making. But if that happened without Shannon's knowledge, the government's evidence at trial said there ought to be these log entries available for later forensic discovery to corroborate that theory, and they're not there. Right. And my response is that the time to address that would have been during that trial if the trial counsel would have been adequately investigated and understood the case. He could have inquired as to what those log-in entries mean. I can't tell this court what those log entries mean, but I know Mr. Richardson reviewed that record, and that was his opinion. And that may be something that could be fleshed out in an evidentiary hearing. What do we do with what I will loosely call the apology emails after the allegations came to light? Sure. I think the apology emails are at best just general apologies regarding pictures that were taken, not specifically referencing any inappropriate pictures. Clearly, the family of this minor victim, and he is a victim here, he's just not a victim of the defendant, Mr. Shannon, was very upset with Sean based upon these new revelations of finding messages on the minor victim's phone. When approached with that. The apology wasn't for things that were appropriate. The plain import of the apology is, I'm sorry, I did something wrong. Unless I'm mistaken, it wasn't an email, was it? I don't mean to quibble on the facts. It wasn't a text? Yes, they were text messages. And it was a text from Mr. Shannon's telephone? Correct. And, again, I don't think there's anything in there that with Mr. Shannon being faced with allegations from that family, apologizing, you know, if I did anything wrong. It wasn't generic like that. It was specific to the pictures. Okay. It was, sorry about taking the pictures. I should never have done it. I did it without thinking. And, again, it doesn't reference. I think the mother was upset, right? The mother saw that they were sexually explicit. That's the setting in which the apology came. Sure. And the apology, what pictures is he referencing? You know, there's a misunderstanding of what pictures. Are these inappropriate pictures? Are these pictures that were just taken in the course of this appropriate relationship? I think those, that is the best answer to that question and one that the jury should consider. Well, that's utterly implausible. And the whole defense of an alternative suspect in Mr. Bradshaw is implausible in light of the sheer volume of the forensic evidence in this case, even if he had your client's Apple ID. And that's what the trial court, Judge Shannon, determined in his order. But, again, we had presented an affidavit from Mr. Richard and said it is plausible. And it addresses that issue that with an Apple ID there is that opportunity. I would agree with the court if there weren't any other evidence showing that Mr. Bradshaw had it out for, if you will, Mr. Shannon. I mean, right before this occurred, there was a message that we included that made threats that Mr. Bradshaw had access to things, had access to passwords. That was never addressed with Mr. Bradshaw. Mr. Bradshaw was on the stand. He could have been cross-examined easily on those statements to see whether or not he sent that message. And if he denied it, then there could have been impeachment on that denial. Mr. Lovelace, can I ask you about a different aspect of the case because it would benefit to hear you comment on it. And this is, to my eye, in your briefing, you do very little with the victim's testimony. But the victim, the boy, testified, right? Correct. The boy did testify. Okay, so it's not – it seems to me in a case like this that a child's testimony about sexual exploitation could be quite weighty to a jury. So if the jury chose to credit the child's testimony, isn't that alone enough? I don't think it is alone enough. And, again, I don't want to minimize the impact on this young man. We're not saying that he's not a victim here. Oh, I understand. But the briefing gets all – I understand it. I mean you're doing the best you can with the hand you've been dealt. Forensic this and iPhone that, you know, all that. But we have a victim. The victim walked into a courtroom and testified. Right. And I would agree that that is very impactful testimony. And it always is when a child is on the witness stand making those allegations. But that doesn't mean, as defense counsel, you don't present a very plausible defense. The only one there – So fair enough there. So let's just say you step over the Strickland Prawn 1 hurdle. When you get to Prawn 2, when you get to the prejudice, don't you run headlong into the victim's testimony? I think that is something that the court can consider as far as the victims. And it is something that creates a dilemma at this stage when we're this far down the road on a 2255, Your Honor. I would agree. Could I ask you about another aspect of the case? And that is the sentencing before Judge Bruce. I don't – I know you have a lot of experience as both a prosecutor and defense counsel. I don't remember having seen a sentencing judge deliver anything like this warning that Judge Bruce delivered about, if this comes back to me, I might sentence you more severely. I agree. Have you ever seen anything like that? I've not, and it's always – that's always struck me in this case, Your Honor. It even struck me before I learned of the ex parte communication. When I originally filed this, all of the ex parte communication issues were, you know, coming to light. And so I felt I needed to include it. And it really added, I thought, context to what I thought to be inappropriate. I know the government criticizes Mr. Shannon for not filing a direct appeal. I took this at the post-conviction stage, so that wasn't part of my decision making. But I don't really criticize Mr. Shannon for not filing a direct appeal when the trial judge told him, if you do and this comes back to me, I'm going to sentence you to more time. I think that is inappropriate. I think it's part and parcel to our claims here. Thank you. I see my time is up. Thank you.  Good morning, Your Honors. May it please the Court. I'm Scott Simpson on behalf of the United States. Counsel for the defense started his argument by saying that what they're seeking here is an evidentiary hearing. What that hearing would cover, of course, would be the performance by defense counsel at trial. But I think the defense is really forgetting that Strickland has two requirements, both deficient performance and prejudice. Counsel is focusing almost exclusively on that first requirement and ignoring the second. As the Supreme Court said in Strickland, if it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice, which we expect will often be so, that court should be followed, said the court. That's what we believe the court should do here. If I could just summarize some of the evidence that was presented at trial, that ties Mr. Shannon's conduct not just to an Apple ID, but to his location in Muncie, to his face, something that someone saw him do, and to his home, his home indicator, and otherwise to his location. As we've already talked about, the victim testified that it was Mr. Shannon who took the pornographic pictures of him on two occasions, both in Muncie in October 2014 and in Decatur in February 2015. The furnishings shown in the October 2014 pictures match the furnishings that investigators later found in Mr. Shannon's own bedroom in Muncie. Cell phone tower records showed that Mr. Shannon's iPhone was located in his hometown of Muncie when he and the victim were exchanging sexually explicit texts before that encounter in Decatur. Cell tower records also showed that Shannon's phone traveled from Muncie to Decatur for that rendezvous in Decatur. Hotel records showed that Mr. Shannon stayed at the Ramada Inn in Decatur on February 28, 2015. Hotel records also showed that Mr. Shannon was driving a black GMC Sierra at that time, and that's the car that Mr. Shannon owned. Hotel records also showed that he stayed in room 222, and the furnishings shown in the Decatur pictures of the victim match the furnishings that investigators later found in room 222. Mr. Simpson, can I ask you about a couple of the aspects of the case that I find troubling? One has to do with the testimony of the person designated here as A.W. You're as familiar as anybody with our court's dealings with the aftermath of Judge Bruce's communications with the Office of the U.S. Attorney. Why should we not treat the decision to admit A.W.'s testimony as a discretionary call that might require a new trial, particularly given, at least as I understand it, A.W. presented himself to Mr. Shannon, as the evidence indicates, as an adult with whom a relationship would have been legal? Your Honor, a couple of things. Judge Shadid, of course, looked at this case after Judge Bruce did. Judge Shadid decided the 2055 motion, and Judge Shadid did not seem to be troubled by that decision to admit the testimony of A.W. Yes, we're here on an appeal of that decision, so okay. Correct. Recognizing that ordinarily a district judge would be given a fair amount of discretion in deciding whether to admit such testimony, given our jurisprudence of Judge Bruce at this point for the years in which these communications were going on, why should we not treat that as a discretionary decision that is at least debatable enough to warrant a new trial before a different judge? Your Honor, I think, and of course turning to the question about Judge Bruce's allegedly unconstitutional bias, we believe this case is all but resolved by the Williams and Moser decisions by this court. I'm familiar with those decisions. I'm asking you, if I understand those decisions correctly, we have been upholding judgments entered by Judge Bruce when in the absence of, in essence, debatable discretionary calls that went against the defendant. My question to focus in on the A.W. point is, given evidence that A.W. was presenting himself as an adult, why is this not such a discretionary call? My recollection, Your Honor, is that the Williams decision, and I believe also the Moser decision, also involved some discretionary calls by Judge Bruce. In those decisions, the court did not find those discretionary calls to be enough to find that Judge Bruce was unconstitutionally biased or that there was any bias that required a new trial. If your argument is a lack of prejudice, I understand that. I don't understand. Debatable discretion, different view. Could I also ask you to address this warning that Judge Bruce delivered in the original sentencing? I acknowledge, Your Honor, as Your Honor said earlier, that that is unusual. However, we do encourage judges to discuss their thinking, discuss their reasoning in rendering a sentence, and often that involves the judge discussing the judge's thinking process. And, of course, Judge Bruce gave a very low sentence here. It was only 10% of the guideline sentence. Please don't use 7,000 months of 600-year sentence as the baseline. That is not a persuasive point. There's a fair amount of discretion here exercised in sentencing. I understand it could have been a much heavier sentence, but this was not unusual in my experience. This is unique, at least in cases I've seen, and I'm troubled by it. So I would welcome your thoughts about what we should do about that. I can understand Your Honor's thinking, Your Honor. Obviously, in reading the transcript, Judge Bruce struggled greatly. As he said, he struggled greatly with what sentence to give here. And I think Judge Bruce was being very honest that, number one, he struggled with it, and, number two, he struggled with it so much that he wasn't sure he would give the same sentence if the case came before him again. Perhaps if he had the chance to think about it again, he would not have said that, but I think he was simply speaking very frankly about his reasoning. Well, he went beyond announcing that the sentencing decision was difficult. He tied this uncertainty about whether he would increase the sentence if there were a remand for some reason with the appeal rights warning. I'm sorry, Your Honor. With the appeal rights warning, which suggests a due process violation that is not briefed or argued and wouldn't be litigated until there would be an increased sentence if there were to be a remand, but it's highly unorthodox. It's hard to explain just on the basis of the district court's struggles with an appropriate sentence. It seems to be specifically linked to appeal rights. I suspect, Your Honor, that we were seeing Judge Bruce carrying out what this court and the Supreme Court has encouraged, that is, for the district judge to explain his reasoning, to explain his thinking process in coming up with a sentence. We've never encouraged this, nor has the Supreme Court. I understand that, Your Honor. I understand that. Not that specific statement, I understand. With my remaining time, if I could just address a little more the evidence, the overwhelming evidence of Mr. Shannon's guilt. Again, that evidence tied Mr. Shannon himself, aside from any Apple ID. The forensic examination of his phone showed that he deleted 2,000 of those messages between him and the victim on the day after he apologized to his mother for sending those messages. Another fact that hasn't come out yet is that when he sent the apology text, the cell phone data information from AT&T showed that his phone was located at his home in Muncie. And again, turning again, if I could just one more moment about Judge Bruce, Your Honor. Again, we suggest that this case is all but controlled by Williams and Mosier. The only differences, aside from what has already been discussed about Judge Bruce's statement, is that Judge Bruce handled the sentencing, which was not the case in Williams and Mosier, and unlike in Williams, one of Judge Bruce's ex parte emails related to a scheduling matter in this case. But those were far from determinative differences between this case and Williams and Mosier. So we would encourage the court to affirm. Thank you. Thank you very much. Mr. Lovelace. Thank you. Just maybe to address the issue of the evidence, as far as the cell tower information, there really hasn't been a denial in our 2255 that Mr. Shannon was at the locations. So I agree that it's very powerful evidence that was used in this case. And, in fact, there was some criticism that if the father would have been called, that that would have placed him at the scene. Well, he's not denying that he wasn't at the hotel. He's just denying that any of that occurred and the father would have, if had been called, would have said, I stayed in the room with him and I didn't see any of this occur. So as far as the cell tower records, I mean, all those cell tower records are going to show is location of the phone and whether or not data was being transferred, not necessarily what data, what type of data. I've had some experience in this area. And so I don't think that that is particularly powerful evidence in and of itself. So I'll stop there. Thank you. Thank you very much. Our thanks to both counsel. The case is taken under advisement.